IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES OF AMERICA,**

v.                                    **CRIMINAL ACTION NO. 4:19-cr-37**

**JA'QUAN LAMONT HERBERT,**

**Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Ja'Quan Lamont Herbert's Motion to Suppress. Defendant has filed a memorandum in support of his motion, the Government has filed a response, and Defendant filed a reply. A hearing was held on June 14, 2019. For the reasons discussed below, Defendant's Motion to Suppress is **GRANTED**.

## I. BACKGROUND & PROCEDURAL HISTORY

Marshall Courts is a housing development of the Newport News Redevelopment Housing Association, in Newport News, Virginia that is known as a "high-crime area." Suppress Hr'g Tr. at 4:5–7. The Newport News Police Department ("NNPD") often patrols this "high-crime area" to enforce trespassing. *Id.* at 4:21–5:1. In fact, NNPD apparently has a policy of engaging in "consensual encounters" with individuals in order to see if they are indeed trespassing. *See id.* at 4:14–5:1, 31:25–32:4.

On the evening of October 12, 2018, Defendant was standing on a sidewalk among a group of individuals in Marshall Courts. *Id.* at 13:9–11, 15:13. Officer C.D. Fundak, and at least three other NNPD officers were patrolling the area. *See id.* at 11:5–10. According Officer Fundak's testimony, Officer Allen observed Defendant "break away from the group, and he asked [Officer Fundak] to make [an] approach." *Id.* at 15:13–14. Officer Fundak, on a bicycle, approached

1

Defendant head-on. *Id.* at 6:12–14. Officer Fundak first saw Defendant from fifty feet away. *Id.* at 24:21–25. Defendant was walking on the sidewalk. *Id.* at 26:25–27:3. When he was about ten or fifteen feet away from Defendant, Officer Fundak "observed [Defendant] throw a bottle to the ground." *Id.* at 6:18–22. The bottle contained "Bug Juice," a fruit-flavored non-alcoholic children's drink. *Id.* at 7:1–4; ECF No. 17 at 5 n.1.

When he finally initiated contact with Defendant, Officer Fundak was five to ten feet away from Defendant. Suppress Hr'g Tr. at 16:13–15. Officer Fundak left his bicycle on the ground behind him. Suppress Hr'g Tr. at 27:6–17. Therefore, Officer Fundak stood between Defendant and the bicycle. *Id.* During the entire encounter, Defendant cooperated and made no attempts to run, nor did he make any furtive movements. *Id.* at 7:9–10, 16:16–20. Officer Fundak asked Defendant if he lived in the area, and when Defendant replied in the affirmative, Officer Fundak asked for identification. *Id.* at 7:7–8, 22:24–23:1. As Defendant was handing him the I.D., Officer Fundak "could detect the odor of marijuana coming from [Defendant's] person." *Id.* at 7:17. Defendant then handed Officer Fundak "a clear plastic bag which [Officer Fundak] believed contained suspected marijuana at the time." *Id.* at 8:8–9. Mere moments later, the three other officers arrived at the scene on bicycles and a police car. *Id.* at 18:13–18. As one of the other officers was handcuffing Defendant, Officer Fundak noticed what appeared to be a semiautomatic weapon on Defendant's person and recovered it after Defendant was in handcuffs. *Id.* at 9:6–14.

On April 9, 2019, Defendant was indicted on two drug charges and two gun charges. ECF No. 1. On May 13, 2019, Defendant filed his instant motion to suppress. ECF No. 15. The Government responded in opposition on May 28, 2019. ECF No. 16. Defendant filed a reply on June 3, 2019. ECF No. 17. The Court held a hearing on June 14, 2019. ECF No. 24.

## II. LEGAL STANDARD

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A stop constitutes a seizure under the Fourth Amendment. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A law enforcement officer can execute an investigatory stop if that officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (internal quotations omitted).

In order to perform a *Terry* stop, the police office must have a reasonable articulable suspicion that a crime is about to be or has been committed. *See United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). This reasonable articulable suspicion "must [have a] particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 539 (quoting *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009)). The police officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Additionally, the Court must "give due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Mason*, 628 F.3d 123, 128 (4th Cir. 2010). The Court makes this determination based on the facts and the totality of the circumstances. *Black*, 707 F.3d at 537. What might be considered innocent conduct viewed in isolation may give rise to reasonable belief when viewed in totality. *Id.* at 539.

However, the mere fact that an officer approaches an individual does not immediately implicate *Terry*. *United States v. Brown*, 401 F.3d 588, 593 (4th Cir. 2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). A police officer engages in a consensual encounter if they

simply ask a few questions and "'a reasonable person would feel free to disregard the police and go about his business.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

### III. DISCUSSION

During his testimony, Officer Fundak made it very clear that his sole reason for initiating contact with Defendant was because Officer Allen directed him to do so. Suppress Hr'g Tr. at 15:6–16:3, 17:7–11, 25:9–13. He also repeatedly emphasized that the contact began as a consensual encounter. *Id.* However, it is apparently NNPD policy to engage in such "consensual encounters" for the express purpose of investigating if an individual is trespassing. *See id.* at 4:14–5:1, 31:25–32:4.

The Court finds such a policy constitutionally disturbing at best. While police officers are well within their authority to simply pose questions to individuals, *Brown*, 401 F.3d at 593, if these encounters are being conducted with investigative intent, it seems that such contact is more of a *Terry* stop. *See Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981) (noting that the purpose underlying a *Terry* stop is "investigating possible criminal activity"). Because that policy is not properly before the Court, it need not examine the policy in detail.

What is abundantly clear to the Court, however, is that at least in this case, Officer Fundak made contact with Defendant to investigate whether he was trespassing or not. Officer Allen directed Officer Fundak to stop Defendant simply because he walked away from a group of individuals. Suppress Hr'g Tr. 15:13–19. According to Officer Fundak, Officer Allen did not suspect the group of any criminal activity.[1] *Id.* at 15:20–25. In fact, Officer Fundak acknowledged that he had no reason to suspect that Defendant was actually trespassing. *Id.* at 14:15–18, 15:1–3.

---

[1] The Court notes that the Government produced Officer Fundak as a witness but did not call Officer Allen as a witness, even though he supposedly was the one who would have had the chance to develop reasonable articulable suspicion when Defendant walked away from the group. The Court is unsure why the Government chose to omit arguably a relevant witness. Nonetheless, the Court is bound solely to the evidence introduced at the hearing.

Merely being present in a high-crime area is insufficient to warrant a *Terry* stop. *Slocumb*, 804 F.3d at 682.

Moreover, any argument that this was a consensual encounter is belied by the fact that when Officer Fundak met with Defendant, he left his bicycle on the ground, blocking Defendant's path. Suppress Hr'g Tr. at 27:6–17. Blocking the sidewalk with your own body and your bicycle does not make it easy for "'a reasonable person [to] feel free to disregard the police and go about his business.'" *Brown*, 401 F.3d at 593 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The Court therefore finds that Officer Fundak's initial encounter with Defendant was not consensual but was already a full-blown investigatory stop.

The Government would have the Court believe that this case is identical to *United States v. Bumpers*, 705 F.3d 168 (4th Cir. 2013), and *United States v. Radcliffe*, 757 F. App'x 250 (4th Cir. Dec. 21, 2018). ECF No. 16 at 4, Suppress Hr'g Tr. at 34:9–11. In *Bumpers*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held that the police officer engaged in a lawful *Terry* stop because he had a reasonable articulable suspicion that the defendant was trespassing. 705 F.3d at 176. However, the facts of that case are quite different from this situation. In *Bumpers*, the convenience store where the defendant was stopped "had a particular history of problems with trespassing," even going so far as "to post 'no trespassing' signs around the store and to file a written request for the police to 'enforce criminal violations' on the premises." *Id.* at 170. No such history exists for Marshall Courts, and there was no request to enforce the trespassing laws in the area, simply an NNPD policy. Furthermore, the police officer noted several clear facts that raised his suspicion of the defendant: he was behind the store, not anywhere near the front, he had no bags or other shopping related items, and he began walking at a "fast pace" "almost immediately" after he saw the officer's vehicle." *Id.* Defendant in this case

5

was calmly walking on a sidewalk, and Officer Fundak admitted he had no reason to suspect Defendant of trespassing. Suppress Hr'g Tr. at 14:15–18, 15:1–3. *Bumpers* stands for the uncontroversial proposition that an officer may lawfully stop an individual if they have a reasonable articulable suspicion of trespassing, but it has little to do with Defendant's case.

*Radcliffe* is even more inapposite. There, the Fourth Circuit held that the officer had reasonable suspicion to stop the defendant. 757 F. App'x at 253–54. In that case, one detective noticed the defendant "lift up his shirt and adjust an object in his waistband," after which she radioed the detective who made the actual stop. *Id.* at 251. Upon initiating the encounter, the defendant appeared "visibly shaken" and smelled of marijuana. *Id.* Here, Defendant never reached for his waistband. Suppress Hr'g Tr. at 22:16–21. Prior to meeting Officer Fundak, Defendant was walking calmly, *id.* at 14:10–14, and he remained calm when interacting with Officer Fundak. *Id.* at 7:7–8. None of the notable facts that created reasonable suspicion in *Radcliffe* exist here.

The Government also alludes to the fact that Defendant littered when he threw the bottle of Bug Juice on the ground. Suppress Hr'g Tr. at 6:20–25. However, according to his own testimony, Officer Fundak was already approaching Defendant when this happened. *Id.* at 6:15–18. When Officer Fundak first saw Defendant, the men were merely fifty feet apart. *Id.* at 24:21–25. Defendant threw the bottle when Officer Fundak was ten to fifteen feet away from him. *Id.* at 6:20–22. Officer Fundak was five to ten feet away from Defendant when they began talking. *Id.* at 16:13–15. During the stop, Officer Fundak never mentioned the bottle at all. Instead, he was largely concerned with Defendant's residence. After all, he had already decided to investigate whether Defendant was trespassing when he began to approach Defendant. *Id.* at 7:7–8.

Finally, Officer Fundak suggested that he smelled marijuana emanating from Defendant's person as he approached. *Id.* at 7:15–17, 26:7–10. The Court is unsure exactly when Officer

Fundak smelled this odor, either before Defendant dropped the bottle, when he handed Officer Fundak the I.D., or some other time. Nonetheless, because the Court finds that the initial encounter constitutes a *Terry* stop, it need not concern itself with the timing of this olfactory event.

Because he had no reason to suspect Defendant, the Court finds that Officer Fundak did not have a reasonable articulable suspicion that Defendant was trespassing or committing any other crime. Merely being present in a high-crime area at night and then walking away from a group of individuals who were not suspected of any criminal activity does not rise to the level of supporting a reasonable articulable suspicion.

### IV. CONCLUSION

For the reasons stated on the record and discussed above, Defendant's Motion to Suppress is **GRANTED**, and all evidence obtained from the unlawful stop is **SUPPRESSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendant and the United States Attorney.

**IT IS SO ORDERED**.

Newport News, Virginia
July /6, 2019

/s/
Raymond A. Jackson
United States District Judge